IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | | |
|---|---|---|
| DONALD JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1334-KAJ |
| | ) | |
| STATE OF DELAWARE, by and through the DELAWARE DEPARTMENT OF CORRECTIONS, STANLEY TAYLOR COMMISSIONER, PAUL W. HOWARD BUREAU CHIEF, BEN ROBINSON M.D. MEDICAL DIRECTOR, RICK KEARNEY WARDEN SUSSEX CORRECTIONAL INSTITUTION, ROBERTA BURNS M.D. STAFF PHYSICIAN, SUSAN RICKARDS ADMINISTRATOR OF HEALTH SERVICES, and JOHN AND JANE DOES I-XII, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REDACTED DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT**

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

Attorney for State Defendants

DATE: October 25, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF DELAWARE

| | |
|---|---|
| DONALD JORDAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF DELAWARE, by and )<br>through the DELAWARE )<br>DEPARTMENT OF CORRECTIONS, )<br>STANLEY TAYLOR COMMISSIONER, )<br>PAUL W. HOWARD BUREAU CHIEF, )<br>BEN ROBINSON M.D. MEDICAL )<br>DIRECTOR, RICK KEARNEY WARDEN )<br>SUSSEX CORRECTIONAL )<br>INSTITUTION, ROBERTA BURNS )<br>M.D. STAFF PHYSICIAN, SUSAN )<br>RICKARDS ADMINISTRATOR OF )<br>HEALTH SERVICES, and JOHN AND )<br>JANE DOES I-XII, )<br>)<br>Defendants. ) | C.A. No. 04-1334-KAJ |

**REDACTED DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS/SUMMARY JUDGMENT**

**I.   Introduction**

At their most specific, Plaintiff's allegations in this case involve his claim that he was denied a liver biopsy and medical treatment for Hepatitis C. The gravamen of Plaintiff's complaint is that the medical provider denied him access to medical treatment in violation of the Eighth and Fourteenth Amendment, and the Americans with Disabilities Act ("ADA").

Defendant refers to matters outside the pleadings, therefore the Court may treat its motion to dismiss as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Camp v. Brennan*, 219 F.3d 279, 280 (3rd. Cir. 2000) (consideration of matters beyond the complaint converts a motion

to dismiss into a motion for summary judgment). Defendants Department of Correction (hereinafter "DOC"), Commissioner Stanley Taylor, Bureau Chief Paul Howard and Warden Rick Kearney, contend that they are entitled to judgment as a matter of law because there are no genuine issues of material fact in dispute. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (once the moving party has carried its initial burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"). Defendants assert that Plaintiff has not made, and cannot make a sufficient showing of the essential elements of his case for which he carries the burden of proof. Therefore, dismissal is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, Defendants state, unless there is sufficient evidence to enable a jury reasonably to find for the nonmoving party on the factual issue, summary judgment should not be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**II.    Statement of Facts**

Plaintiff was sentenced to twenty five years in prison in July, 1991. In his complaint, Plaintiff claims to have contracted Hepatitis C in 1992. In 2002, Plaintiff's test results for AST and ALT were elevated in July. Since that date his AST and ALT have been tested thirteen times. Of the thirteen subsequent tests, the AST has been elevated four times, and thee ALT has been elevated five times. The last time the AST and ALT were elevated was January 2004. (*See* lab results attached as Exhibit A).

In his complaint Plaintiff claims that since 2002 that he has "suffered from persistent abdominal pain, fatigue, vomiting and other discomforts." (*See* Complaint, ¶ 55). However, during that time period, Plaintiff's medical records show that he suffered from ongoing problems

3

███████ stones. (*See* preoperative history and physical report summarizing Plaintiff's history and treatment of ███████ attached as Exhibit B).

On April 30, 2004, Plaintiff filed a grievance claiming that he was refused a liver biopsy by the medical provider. Plaintiff did not receive a liver biopsy as an outcome of the grievance, because according to the medical provider, he failed to meet the National Institutes of Health criteria for a liver biopsy. (*See* grievance report attached as Exhibit C). Plaintiff appealed the decision and his appeal was denied. (*See* letter from Bureau Chief Howard attached as Exhibit D). Plaintiff then filed this complaint.

## ARGUMENT

**I. PLAINTIFF FAILS TO STATE A CLAIM UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT AGAINST THE STATE DEFENDANTS IN EITHER THEIR INDIVIDUAL OR OFFICIAL CAPACITIES.**

    **A.  TITLE II OF THE AMERICANS WITH DISABILITIES ACT DOES NOT PROVIDE A BASIS FOR PERSONAL LIABILITY.**

Title II of the Americans with Disabilities Act (hereinafter "ADA") addresses services provided to individuals.[1] Title II of the ADA does not provide a basis for liability of the State defendants. The plain language of 42 *U.S.C* §12132 states that people with disabilities shall not be excluded from activities and programs of a public entity. *Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004). In *Miller*, the Court held that 42 *U.S.C.* §12132 applies only to public entities and "does not provide for claims against individuals in their individual capacities…". *Id.* at 1277. Plaintiff states in his Complaint that State Defendants have violated the ADA by "failing to reasonable [sic] accommodate Class members' handicaps by not providing adequate medical care." (*See* Complaint ¶ 82). Plaintiff fails to allege what State Defendants did as individuals to

---

[1] Plaintiff refers to 42 *U.S.C.* § 12111(8) in his Complaint. The section which Plaintiff relies on addresses employment, and is not applicable to Plaintiff. Title II of the ADA which addresses services is the appropriate section for discussion of the ADA in the prison setting.

4

discriminate against him, and prevent him from taking part in an activity, service or program. The only evidence that Plaintiff provides that shows that any of Defendants had personal knowledge or involvement regarding his Hepatitis C infection is the letter from Bureau Chief Howard which denied his grievance appeal. (*See* Exhibit D). When defendant Howard, a prison official with no medical training, denied the appeal, he relied on the knowledge that Plaintiff was in the care of medical professionals, who had previously stated their reasons for not going forward with a liver biopsy. Defendant Howard and the other State defendants are not entities. Plaintiff cannot use Title II of the ADA to sue the state defendants as individuals for damages. *Miller*, 384 F.3d at 1277. Therefore, Plaintiff's claims brought pursuant to Title II of the ADA, against the State defendants as individuals must fail.

### i.     The ADA does not create a remedy for medical malpractice.

Plaintiff cannot use the ADA to purse a claim for medical negligence against the non-medical prison officials as individuals. The ADA addresses discrimination on the basis of a disability or disorder, and is not a remedy for medical negligence. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *See Owens v. Chester County*, C.A. No. 97-1344, 2000WL 116069 (E.D. Pa. Jan. 28, 2000)(reiterates the holding in *Bryant* that the ADA is not to be used to pursue a medical malpractice claim). In *Bryant* the Court examined the case of a paraplegic prisoner who alleged that he was further injured because he did not have guardrails on his bed, and was denied pain medication. The Court held that the ADA is a remedy for discrimination on the basis of a disability, and "does not create a remedy for medical malpractice." *Bryant*, 84 F.3 at 249. Like the inmate in *Bryant*, Plaintiff does not allege that any of the individual prison officials discriminated against him *because* he has Hepatitis C. Instead, Plaintiff alleges that not receiving a requested liver biopsy, a particular medical procedure, is a violation of the ADA.

(*See* Complaint ¶ 82). He does not explain how this may be a discriminatory action by the individual prison officials, based on his disease. Therefore, Plaintiff's claim for damages against the State defendants, is without merit.

### B. STATES AND OFFICIALS ACTING IN THEIR OFFICIAL CAPACITY HAVE ELEVENTH AMENDMENT IMMUNITY FOR ALLEGED TITILE II VIOLATIONS IN PRISONS.

Eleventh Amendment immunity prevents Plaintiff from pursing a claim for damages against the Defendant DOC or the State defendants in their official capacities under Title II of the ADA. The Eleventh Amendment sovereign immunity applies to the State defendants, despite the language of Title II. *Cochran v. Pinchak*, 401 F.3d 184, 190 (3rd Cir. 2004). In *Cochran*, the Court applied the analysis set out in *City of Boerne v. Flores*, 117 S.Ct. 2157 (1997), and *Turner v. Safley*, 107 S.Ct. 2254 (1987), to a case involving a blind inmate who claimed that prison official violated the ADA. The Court determined that the plaintiff's protection under Title II of the ADA can be no greater than the protection afforded by the Eighth Amendment, and held that the "Eleventh Amendment precludes a claim for damages…under Title II of the ADA." *Cochran*, 401 F.3d at 191.

When analyzing a claim using the criteria set out in *Boerne,* the claim must be evaluated in light of; (1) the rights that Congress wanted to enforce with the enactment of Title II of the ADA; (2) whether there was a significant pattern of discriminatory treatment of the disabled; and (3) if there was discriminatory conduct, is abrogation of a state's Eleventh Amendment sovereign immunity the proportionate response to the violation. *Cochran*, 401 F.3d at 190. In its opinion, the *Cochran* Court examined the application of the *Boerne* analysis in *Miller v. King*, 384 F.3d 1248 (11th Cir. 2004). *Cochran*, 401 F.3d at 190.

Like *Miller*, the Court in *Cochran* determined that Title II does not provide more protection than the Eighth Amendment right to be free from cruel and unusual punishment. *Cochran*, 401 F.3d at 193. When examining the decision in *Miller*, the *Cochran* Court pointed out that the Court deciding *Miller* determined that "Title II, as applied to prisons, would substantively and materially rewrite the Eighth Amendment." And that "Title II is not tailored to provide prophylactic protection of the Eighth Amendment right." *Cochran*, 401 F.3d at 190 (citing *Miller* 384 F.3d at 1273-74). The Court in *Cochran* also pointed out that the *Miller* Court distinguished the right to be free from cruel and unusual punishment from the obligations imposed under Title II to accommodate people with disabilities with regard to services, activities and programs provided by the prison. *Cochran*, 401 F.3d at 191(citing *Miller* 384 F.3d at 1275). In addition to examining the *Boerne* criteria as applied in *Miller*, the Court in *Cochran*, recognized that prison regulations create another layer of analysis. The Court looked to *Turner v. Safley* for the factors used in evaluating "the reasonableness of prison regulations." *Cochran*, 401 F.3d at 191.

In *Turner*, the Supreme Court set out an analytical framework for evaluating regulations in the prison setting. The evaluation is composed of a three step analysis: (1) whether there is a valid and rational connection between the prison rule and the legitimate government interest; (2) whether there are alternative means open to inmates to secure that right; and (3): "the impact that the accommodation of the asserted right will have on guards and on the allocation of prison resources." *Turner*, 107 S.Ct. at 2262.

An analysis of Plaintiff's claim using the *Turner* factors shows that the Eleventh Amendment does preclude Plaintiff from suing the State defendants for damages. The criteria used by the medical providers in evaluating the need for a liver biopsy are based on the

7

provider's medical knowledge and research on the subject. The criteria are developed by the providers and there is no input regarding these medical decisions from the non-medical prison officials. Plaintiff has a right to medical care. In the prison system Plaintiff has in fact received medical care, and monitoring of his Hepatitis C status in accordance with the NIH guidelines. (*See* Exhibits A- C). As with medical care provided to patients outside of prisons, the State defendants argue that alternative means to secure a specific procedure are sometimes limited by the determination of medical professionals that the patient does not require the procedure. Finally, accommodating Plaintiff's requests has an impact on the allocation of both staff and financial resources for the state and prison system. The medical professionals have determined that at this time Plaintiff does not qualify for a liver biopsy according to their protocol. Acquiescing to Plaintiff's demand for this procedure, simply because *he* believes he needs it, will divert resources from those who have been determined to require more medical care. Thus, Plaintiff does not meet the elements set out in the *Turner* analysis, and the Eleventh Amendment sovereign immunity should preclude him from suing the State defendants.

As with those defendants sued as individuals, the ADA does not create a remedy for medical malpractice against non-medical prison officials acting in their official capacity. Although Title II focuses on entities, Plaintiff has not alleged that he has been discriminated in his access to a prison program or service, or by the prison officials due to his Hepatitis C infection. It is the discrimination on the basis of the disease that triggers the remedies of the ADA, not the allegation that there was inadequate treatment. *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996);   Plaintiff has failed to show how the State defendants, in their official capacities, have discriminated against Plaintiff by denying his request for a liver biopsy. Plaintiff has failed to show that he has not received a service that has been provided to other similarly situated

inmates, further demonstrating that he has not suffered discrimination under Title II of the ADA. The decision about a liver biopsy is made by the medical professionals and the non-medical prison officials depend on the medical providers to make the treatment decisions.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED UNDER THE EIGHTH AMENDMENT.

### A. PLAINTIFF'S COMPLAINT FAILS TO ALLEGE ANY PERSONAL INVOLVEMENT OF DEFENDANTS DOC, TAYLOR, HOWARD, AND KEARNEY.

Plaintiff's complaint fails to allege any personal involvement by the named State Defendants, DOC, Commissioner Taylor, Bureau Chief Howard, and Warden Kearney. In actions brought pursuant to 42 *U.S.C.* § 1983, an individual cannot be held liable in the absence of personal involvement or knowing acquiescence of the alleged deprivation. *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981) *cert. denied*, 458 U.S. 1121 (1982). "[T]he officials' misconduct cannot be merely a failure to act. Such officials must have played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct." *Id.* Without identifying how they participated in, personally directed, or acquiesced in the events which Plaintiff claims deprived him of constitutional rights, Defendants DOC, Taylor, Howard and Kearney cannot be held liable and dismissal is appropriate. *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir. 1990); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

With the exception of the grievance denial letter written by Paul Howard in his official capacity as DOC Bureau Chief, Plaintiff's Complaint fails to allege any personal knowledge or involvement of State Defendants. Although Bureau Chief Paul Howard denied Plaintiff's grievance appeal, Defendant Howard did so with the knowledge that Plaintiff was under the care of medical professionals. When an inmate is under the care of medical professionals, the non-

9

medical prison official can be justified in thinking that that the inmate is receiving care from capable providers. *Spruill v. Gillis*, 372 F.3d 218, 236(3rd Cir, 2004). In Spruill, an inmate sued non-medical prison officials. In its holding the Court made clear that unless the non-medical prison officials believe or know that prison health care providers are neglecting the health care of an inmate, the non-medical prison officials cannot be held accountable decisions made by the medical professionals. *Spruill*, 372 F.3d at 236. As in *Spruill*, Plaintiff is under the care of medical professionals. Those providers cited protocol they use in evaluating all patients with Hepatitis C when they provided a reason for not granting Plaintiff's request for a liver biopsy. The medical provider's response to Plaintiff's grievance states "On chronic care for Hep C and being followed by Dr. Burns." (*See* Exhibit C, p. 2). The State defendants, who have no medical expertise or training, were justified in believing that Plaintiff was receiving care for his Hepatitis C infection. Thus, Plaintiff's complaint against State Defendants should be dismissed because Plaintiff fails to allege any personal involvement by Defendants DOC, Taylor, Howard or Kearney.

      **B.    PLAINTIFF'S ALLEGATIONS AGAINST THE STATE DEFENDANTS MUST FAIL BECAUSE HIS CLAIMS DO NOT MEET THE STANDARD FOR DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT.**

Plaintiff's Section 1983 claim against the DOC, Commissioner Taylor, Bureau Chief Howard, and Warden Kearney is based upon the Eighth Amendment, under which states have a duty to provide "adequate medical care to those it is punishing by incarceration. *West v. Keve*, 571 F.2d 158, 161 (3rd Cir. 1978). The Supreme Court has held that "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency'." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). *Accord*

*White v. Napoleon,* 897 F.2d 103, 109 (3rd Cir. 1990). In order to satisfy the "deliberate indifference standard set in *Estelle*, a plaintiff must allege either "reckless disregard" of or "actual intent" to disregard his medical condition. *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir. 1985). Additionally, a plaintiff must allege that his medical need is "serious." *Boring v. Kozakiewicz,* 833 F.2d, 468, 472 (3rd Cir. 1987), *cert. denied* 485 U.S. 991 (1988). In order to show "deliberate indifference," a plaintiff must show that a prison official consciously disregarded a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). A prison official's denial of an inmate's reasonable request for medical care constitutes deliberate indifference if the denial of the request causes the inmate to experience undue suffering or the threat of tangible residual injury. *Williams v. First Correctional Medical,* 377 F. Supp.2d 473, 476 (D.Del. 2005). Additionally, deliberate indifference may be found if "necessary medical treatment is delayed for non-medical reasons, or if an official bar access to a physician capable of evaluating a prisoner's need for medical care." *Id. See also, Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3rd Cir. 1979). A prison official is deliberately indifferent only where he or she has the required mental state. *Williams,* 377 F.Supp.2d at 476. Therefore, a prison official can be held liable only where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837. Mere allegations of negligence do not meet the pleading requirements for deliberate indifference. *Estelle,* 429 U.S. at 105-106. Further, a claim of deliberate indifference cannot survive when the medical professional has provided extensive care for the inmate's medical condition. *Calhoun v. Horn,* 1997 WL 769523 at *5 (E.D. Pa. Oct. 8, 1997) (citing *Estelle,* 429 U.S. at 107).

11

Plaintiff's claim that the State defendants acted with actual or reckless disregard and deliberate indifference for his medical condition is not supported by the record. All evidence shows that Plaintiff's requests for medical care were submitted to the medical providers, and he received ongoing medical treatment and monitoring of his Hepatitis C. Plaintiff is complaining about the wisdom or quality of the medical treatment provided to him. However, when some care has been provided, questions as to the adequacy or propriety of the care will not support and Eighth Amendment claim. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993).

The State defendants are not physicians. Plaintiff does not articulate or provide any evidence that the State defendants knew or have the medical background to know that he faced a substantial risk of harm, and disregarded the risk. Prison officials who are not medical professionals can be justified in thinking that inmates are being provided with adequate care when inmates are receiving care from medical professionals. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004). In *Spruill*, the inmate also sued non-medical prison officials, claiming they were deliberately indifferent to his serious medical condition. *Id.* at 223. The Third Circuit held that a non-medical prison official does not meet the Eighth Amendment scienter requirement of deliberate indifference when the official does not override the decisions of the medical providers who are already treating the inmate. *Id.* at 236. Therefore, Plaintiff cannot claim that the State defendants were deliberately indifferent when his grievance appeal was denied. The State defendants were relying on the expertise of the medical professionals who are already treating Plaintiff for his illness.

C. **THE STATE, ITS AGENCIES AND THOSE ACTING IN THEIR OFFICIAL CAPACITIES HAVE ELEVENTH AMENDMENT IMMUNITY IN § 1983 CLAIMS AGAINST THE STATE OR ITS AGENCIES.**

In this case, Plaintiff attempts to sue State of Delaware employees specifically

named in their official capacities. Pursuant to the Eleventh Amendment, the Federal Court lacks subject matter jurisdiction. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute.... It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *In Re Corestates Trust Fee Litigation*, 837 F.Supp. 104, 105 (E.D.Pa.1993), *aff'd* 39 F.3d 61 (3d Cir. 1994). *Cf. Bowers v. National Collegiate Athletic Association*, 346 F.3d 402, 418 (3d Cir. 2003).[2] When reviewing a facial attack on subject matter jurisdiction, the Court is required to accept all allegations in the complaint as true. *See Mortenson v. First Federal Sav. and Loan Assoc.*, 540 F.2d 884, 891 (3d Cir. 1977). Lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), may be raised at any time, it cannot be waived and the court is obliged to address the issue on its own motion, if the parties do not raise it. *Dow Chem. Co. v. Exxon Corp.*, 30 F.Supp.2d 673, 689-690 (D. Del. 1988)(*citing Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 882 (2d Cir.1995)). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. *Id.* (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). *See also In Re Orthopedic "Bone Screw" Products Liability Litigation*, 132 F.3d 152, 155 (3d Cir. 1997)("If a case, over which the court lacks subject matter jurisdiction, was originally filed in federal court, it must be dismissed. If it was removed from state court, it must be remanded").

---

[2] "[A] court may reserve judgment on Eleventh Amendment issues even when advanced by a state **where it can resolve the case on other grounds and the prevailing party on the merits would be the same as the prevailing party if immunity were recognized.**" (Emphasis added).

### D. PLAINTIFF HAS FAILED TO DEMONSTRATE ANY ARTICULABLE BASIS FOR HIS APPARENT ATTEMPT TO BRING THIS SUIT AS A CLASS ACTION.

Plaint refers to himself and "all others so similarly situated" in the first paragraph of his complaint. (See Complaint at ¶ 1). He also refers to "class members" and "all inmates of the Delaware Department of Corrections" in a variety of places in his complaint. (see Complaint at ¶¶ 82, 85, 86, 87, 88 and 91).

Rule 23 of the Federal Rules of Civil Procedure sets forth the prerequisites to class certification. The Plaintiff has failed to allege that any of these prerequisites are present in this action. Rule 23 sets forth certain requirements and each requirement must be demonstrated in order to obtain class certification. As the movant, it is Plaintiff's burden to demonstrate that the prerequisites of Rule 23 have been met. Rule 23 (a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"[C]ourts have consistently held that a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmate in a class action." Brathwaite v Taylor, No. 00-435-GMS, 2001 WL 1117134, at *2 at FN3 (D. Del. September 13, 2001)(*citing* Maldonado v. Terhune, 28 F.Supp.2d 284, 299 (D.N.J.1998); Caputo v. Fauver, 888 F.Supp. 168, 170 (D.N.J.1992)). *See also*, Pusey v. Green, C.A. No. 02-351-SLR, 2003 WL 105480, at *4 (D. Del. January 7, 2003)(denying a *pro se* inmate's motion for class certification due to inability to "adequately represent the interests of his fellow inmates" and citing *Maldonado*.). Plaintiff has failed to distinguish this matter from prior rulings of both the District and Circuit court refusing to grant

class certification to inmate plaintiffs. Plaintiff, as a *pro se* inmate, is *per se* inadequate to represent the interests of the putative class.

In addition, Plaintiff has failed to provide any supporting affidavit, or any document indicating that the remaining members of the putative class have chosen Plaintiff to act as their representative. For all of these reasons, Plaintiff is not qualified to bring a lawsuit or act as a representative of other inmates in the Delaware Department of Correction.

### E. PLAINTIFF'S DEMANDS FOR INJUNCTIVE RELIEF DO NOT MEET THE STANDARD FOR A PRELIMINARY INJUCTION.[3]

Plaintiff provides no evidence to suggest he will prevail against the State defendants on the merits of his case, or how he will be irreparably harmed without the requested relief. In addition, Plaintiff does not show that granting an injunction will not create greater harm to the State defendants, nor does he provide evidence that granting the requested relief will be in the public interest. *Brian B. ex rel Lois B. v. Pennsylvania Dep't of Edu.*, 230 F.3d 582, 583 (3rd Cir. 2000). Plaintiff's records indicate that his Hepatitis C is being monitored, and his condition is stable. (*See* Exhibits A – C). Therefore, Plaintiff is unable to show that he will suffer irreparable harm without injunctive relief. A liver biopsy must be done in a medical facility. Transporting an inmate to a hospital creates security issues while the inmate is outside the prison. At the same time transport of an inmate outside the prison decreases the staff available to maintain security inside the prison. Thus, granting injunctive relief to this inmate at this time is not in the public interest. Accordingly, Plaintiff's demand for an injunction must fail.

---

[3] Although Plaintiff is requesting a permanent injunction, the request is being made before the Court has had the opportunity to decide the merits of the case. The request for an order instructing Defendants to provide a liver biopsy should properly be considered a request for a preliminary injunction. *Green v. Howard R. Young Correctional Institution*, 229 F.R.D. 99, 103 (D. Del. 2005).

For the foregoing reasons, Defendants DOC, Taylor Howard and Kearney respectfully request that this Honorable Court enter an order dismissing Plaintiff's claims against them, with prejudice.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Lisa Barchi
Lisa Barchi  #3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
lisa.barchi@state.de.us

Attorney for State Defendants

DATE: October 24, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2005, I electronically filed *Redacted Memorandum of Points and Authorities In Support Motion to Dismiss* with the Clerk of Court using CM/ECF. I hereby certify that on October 25, 2005, I have mailed by United States Postal Service, the document to the following non-registered participant:

Donald J. Jordan
SBI # 095723
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

/s/ Lisa Barchi
Lisa Barchi  # 3927
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400
lisa.barchi@state.de.us