IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DONALD J. JORDAN | ) | |
| | ) | |
| Plaintiff | ) | C.A. No. 04-1334-KAJ |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF DELAWARE, ET AL | ) | JURY OF 12 DEMANDED |
| | ) | |
| Defendants. | ) | |

AFFIDAVIT

| | |
|---|---|
| State of Delaware ) | |
| ) SS: | |
| Sussex County ) | |

RECEIVED
MAR - 1 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Roberta F. Burns, M.D., being duly sworn according to law, states as follows:

1. I am a medical doctor, licensed to practice medicine in the State of Delaware. I was employed as a Medical Doctor by First Correctional Medical ("FCM"), the former health care provider for the Delaware correctional system, and I make this affidavit on personal knowledge.

2. I am familiar with the medical conditions of plaintiff Donald J. Jordan. I have reviewed his medical chart, his complaint, and his allegations of medical negligence, civil rights, and Americans with Disabilities violations against myself and Susanne Rickards (the "FCM Defendants").

3. FCM was the health care provider for the Delaware correctional system from July 1, 2002 through June 30, 2005.

1

4. Mr. Jordan's primary medical complaint is that he is being denied proper medical treatment for his Hepatitis C condition. Mr. Jordan claims that this lack of treatment is causing him unknown liver damage and general malaise.

5. Hepatitis C is a virus that affects the liver of an infected individual. The virus feeds off of healthy liver cells which can eventually lead to liver injury. Hepatitis C is transmitted through infected blood and body substances and is most frequently acquired through sharing dirty I.V. works or infected cocaine straws, tattoos inked with dirty needles, and, until recently, blood transfusions and organ transplantation.

6. Hepatitis C may take up to 6-8 weeks to appear in an infected individual's blood stream as an elevation of liver chemicals such as ALT, AST, SGPT, SGOT, elevated bilirubin, etc. While these liver chemicals are present in all healthy individuals, they can rise to 2-3 times normal in a Hepatitis C infected individual. It is possible for an individual infected with Hepatitis C to have normal liver chemical levels.

7. To date, it has not been proven that Hepatitis C shortens the life of an infected individual. In fact, evidence indicates that many Hepatitis C infected individuals have had the disease for 20-30 years prior to diagnosis, most have a normal life, and most die from causes other than liver disease. However, it is a known fact that the presence of Hepatitis C in an individual significantly increases the chances of developing Hepatoma, a cancer of the liver.

8. To date, there is no known absolutely effective treatment for the Hepatitis C virus. There are two types of medication used to treat Hepatitis C - Ribavirin and Interferon. Their effectiveness ranges from 40-50% in those who received treatment. Additionally, both of these medications, while questionably effective in the treatment of Hepatitis C, have significant and

2

serious side effects which frequently render the treatment more dangerous than the actual disease in many individuals. Specifically, Interferon is known to seriously affect the mental health of the individuals who take it. Interferon can cause severe depression in healthy individuals and worsen the mental health of those already depressed or schizophrenic.

9.  Because of the many dangers associated with the prescription drug treatment of Hepatitis C patients, the Delaware prison healthcare system, during First Correctional Medical's tenure, was governed by very specific guidelines established by the State in conjunction with First Correctional Medical. See FCM Hepatitis C Policy, attached as Exhibit 1. In determining the Delaware prison's Hepatitis C treatment policy, the State and FCM looked to the National Institute of Health's (NIH), an entity well known in the medical community as one who sets the community standards, as well as the Federal Bureau of Prison Standard's recommendations for treatment of Hepatitis C positive individuals.

10. Under FCM's tenure, the State's Hepatitis C treatment program qualifications were a series of four (4) criteria that all patients had to pass in order to be eligible for prescription drug treatment. See Checklist for HCV Treatment attached as Exhibit 2. Step 2 of the Checklist for HCV Treatment was a critical aspect of the eligibility of a Hepatitis C patient for treatment. The FCM Hepatitis C Exclusion and Inclusion Treatment Criteria Sheet (a copy of which is attached as Exhibit 3), which corresponded to Step 2 of the Checklist for HCV Treatment, had a series of objective criteria that were divided into three (3) categories: Absolute Exclusion Criteria, Inclusion Criteria, and Relative Exclusion Criteria. Any "yes" responses in the Absolute Exclusion Criteria precluded an inmate from eligibility in the Hepatitis C Treatment Program. However, this preclusion was not necessarily permanent, as an inmate might potentially have received prescription drug treatment at

3

a later date if the responses to the FCM Hepatitis C Exclusion and Inclusion Treatment Criteria Sheet changed.

11. For the many individuals who did not qualify for the prescription drug Hepatitis C treatment, their conditions did not go unmonitored. Inmates infected with the Hepatitis C virus received medical treatment in various forms: they were members of FCM's Hepatitis C Chronic Care Clinic and received regular medical evaluations and lab work, additionally they were informed that they should absolutely abstain from the use of alcohol and I.V. drugs.

12. Under FCM's tenure, Donald J. Jordan was precluded from prescription drug Hepatitis C treatment for one reason. An Absolute Exclusion Criterion is Normal ALT or ALT < 1.5 times normal during a twelve (12) month observation period. Mr. Jordan's ALT levels have generally been within the normal range (0-60) from July 2002 through June 2005. Since January of 2004, Mr. Jordan's ALT levels have all been within the normal range. See Lab Work, attached as Exhibit 4.

13. During FCM's tenure Mr. Jordan did not qualify for prescription drug treatment for his Hepatitis C infection, however he received medical treatment. He was a member of FCM's Hepatitis C Chronic Care Clinic and was evaluated regularly by a doctor. Additionally, he received regular lab work to monitor the health of his liver. As previously mentioned, Mr. Jordan's lab work indicates that his ALT levels were in the low end of normal.

14. Based on my medical knowledge in general, and personal knowledge of Mr Jordan's condition from review of his chart and records, it is my medical opinion that Mr. Jordan always received proper medical care from all FCM personnel. The medical care provided by FCM personnel met the standard of care for treatment of Mr. Jordan's condition, and there were no

4

deviations from the standard of care with respect to any FCM personnel.

_____
Roberta F. Burns, M.D.

Sworn to and subscribed before me
this 24 day of February, 2006.

_____
Notary Public

KIRSTEN E. STEWART
NOTARY PUBLIC
STATE OF DELAWARE
MY COMMISSION EXPIRES MAY 28, 2006