IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DONALD JORDAN, individually and on behalf of all persons similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>STATE OF DELAWARE by and through the DELAWARE DEPARTMENT OF CORRECTIONS (DDOC); STANLEY TAYLOR, COMMISSIONER, DDOC; PAUL W. HOWARD, Bureau Chief, DDOC; BEN ROBINSON, MD, Medical Director, DDOC; RICK KEARNEY, Warden, Sussex Correctional Institution, (SCI); ROBERTA F. BURNS, MD, Staff Physician, SUSAN RICKARDS, Administrator of Health Services, DDOC; and JOHN AND JANE DOES I-XII,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )<br><br>Civil Action No. 04-1334-KAJ |

## MEMORANDUM OPINION

---

Donald Jordan, Sussex Correctional Institution, P.O. Box 500, Georgetown, Delaware, 19947; Pro Se.

Lisa Barchi, Esq., Department of Justice, 820 N. French St., 6th Floor, Wilmington, Delaware 19801; Counsel for Defendants State of Delaware, Stanley Taylor, Paul Howard, and Rick Kearney.

Daniel L. McKenty, Esq., Dana M. Spring, Esq., McCullough & McKenty, P.A., 1225 N. King Street, Suite 1100, P.O. Box 397, Wilmington, DE 19899; Counsel for Defendants Roberta F. Burns, M.D. and Susan Rickards.

---

June 9, 2006
Wilmington, Delaware

JORDAN, District Judge

## I. INTRODUCTION

This prisoner civil rights suit, alleging constitutional, statutory, and common law violations, is brought by Donald Jordan ("Jordan") an inmate at the Sussex Correctional Institute ("SCI"). Before me are two motions for summary judgment (Docket Items ["D.I."] 21, 32; the "Motions") filed by the Delaware Department of Corrections (the "DOC"), DOC officers, and First Correctional Medical ("FCM") employees. The first motion, captioned as a "Motion to Dismiss/Motion for Summary Judgment," (D.I. 21) was filed by the DOC, its Commissioner Stanley Taylor ("Taylor"), Bureau Chief Paul Howard ("Howard"), and by SCI Warden Rick Kearney ("Kearney"). The second motion, captioned as a "Motion to Dismiss" but appending an affidavit and other documents, (D.I. 32) was filed by Roberta F. Burns, M.D. ("Burns"), an FCM physician assigned to work at SCI, and Susan Rickards ("Rickards"),[1] another FCM employee.[2]

---

[1] Taylor, Howard, Kearney, and the DOC will be collectively referred to herein as the "State Defendants." Burns and Rickards will be collectively referred to as the "FCM Defendants." All defendants will be referred to collectively as the "Defendants."

[2] There has not been a motion filed on behalf of defendant Ben Robinson, or on the part of any of the John and Jane Does named in the complaint. It appears appropriate service of Jordan's complaint was never effected on Ben Robinson, (D.I. 19), or, for obvious reasons, on any of the John or Jane Does. Jordan filed a Motion for Default Judgment against Defendants Rickards and Burns on January 27, 2006. (D.I. 31.) In that motion, Jordan alleges that Rickards and Burns had not timely responded to his complaint. (Id.) Indeed, it appears that Burns and Rickards executed waivers of service on August 24, 2005, and that their answer to Jordan's complaint was due on October 24, 2005. (D.I. 12, 13.) Although an attorney entered an appearance on Rickards's and Burns's behalf on October 13, 2005 (D.I. 20), and they appear to have issued a subpoena and a deposition notice on December 21, 2005 (D.I. 27, 28), Rickards and Burns did not respond to the complaint until they filed the instant Motion (D.I. 32) on February 24, 2006. Jordan's Motion for a Default Judgment will be denied, however, as Rickards and Burns are now participating in the case, and have responded to his complaint. I will therefore address Jordan's complaint, and the Defendants' motions, on the merits.

Jordan's Complaint (D.I. 2) alleges wrongful medical treatment, in violation of 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments. (D.I. 2 at ¶ 1.) The Complaint also alleges a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, (*id.* at ¶ 82), and a claim for intentional infliction of emotional distress (id. at ¶ 80). Jordan seeks both injunctive and monetary relief. (*Id.* at ¶¶ 84-89, 91.)

Jurisdiction over the § 1983 and ADA claims is appropriate under 28 U.S.C. §§ 1331 and 1343(a). Supplemental jurisdiction exists over the intentional infliction of emotional distress claim under 28 U.S.C. § 1367(a). For the reasons that follow, I will grant the Motions.

## II.   BACKGROUND

Jordan has been an inmate at SCI since 1991. (D.I. 22 at 3.) In 2002, Jordan was informed by a staff physician that he tested positive for the Hepatitis C Virus ("HCV") and that his ALT[3] level was above average.[4] (D.I. 2 at ¶ 53, 54.) According to Jordan, "HCV infection may lead to cirrhosis, liver failure, liver cancer, and death." (D.I. 2 at ¶ 46.) The FCM Defendants acknowledge that "it is a known fact that the presence of [HCV] in an individual significantly increases the chances of developing Hepatoma, a cancer of the liver." (D.I. 32 at Ex. 3 ¶ 7.) Jordan alleges that he has been in persistent pain and discomfort since 2002. (D.I. 2 at ¶ 55.) He contends that he has continually asked for treatment for his infection, including a liver biopsy, yet his

---

[3] ALT is a liver chemical that, if elevated, may indicate HCV. (D.I. 32 at Ex. 3 ¶ 6.)

[4] Jordan believes that he has been infected with HCV since 1992. (D.I. 2 at ¶ 52.) Indeed, his medical records show testing of his ALT levels beginning in July 1992. (D.I. 30, Ex. B.)

2

requests have been denied. (*Id.* at ¶¶ 19, 56, 58, 60.) He seeks a liver biopsy because he argues it is the only way to determine the health of his liver and whether drug treatment is necessary for his HCV infection. (*Id.* at ¶ 31.) In support of his contentions, Jordan filed a letter from Dr. Edward L. Foley, a doctor outside of the Delaware prison health care system, who, based on Jordan's blood tests, recommended a liver biopsy.[5] (D.I. 35 at Ex. 1.) The letter also stated that the doctor's recommendation reflected agreement with an earlier recommendation from another doctor. (*Id.*)

Despite Jordan's efforts to obtain a liver biopsy, FCM, which during the relevant time period was the company under contract with the state of Delaware to provide medical services to DOC inmates,[6] determined that no biopsy was indicated. The DOC and FCM have adopted screening and treatment guidelines for inmates infected with HCV. (D.I. 32, Ex. 3 at Tab 1.) These guidelines were adopted from guidelines

---

[5] Defendants assert that I should not consider Dr. Foley's letter because it does not comply with the formalities set out Federal Rule of Civil Procedure 26 for expert reports. (*See* D.I. 36 at ¶¶ 8-15; D.I. 37.) However, any submission by a pro se litigant enjoys a particularly liberal review of technical and procedural matters. *Tabron v. Grace*, 6 F.3d 147, 153 n. 2 (3d Cir.1993). District Courts construe pro se submissions in a manner that allows, to the fullest extent feasible, for the substance of issues to be addressed, despite any technical deficiencies in pleading or presenting claims and defenses. *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir.1999). Thus, I will consider Dr. Foley's letter in this context, despite its failure to meet the requirements of Rule 26.

[6] From July 2002 through June 2005, FCM was the health care provider for the Delaware correctional system. (D.I. 32 at Ex. 3 ¶ 3.) Defendant Burns was a doctor for FCM and treated Jordan. (*Id.*; D.I. 2 at ¶ 12.) Defendant Rickards was an employee of FCM (D.I. 32 at ¶ 2) and was a member of SCI's Grievance Committee. (D.I. 22 at Ex. C, 7.) Jordan's complaint also describes Rickards as the Health Services Administrator of the DOC. (D.I. 2 at ¶ 11.)

developed by the Federal Bureau of Prisons and the National Institutes of Health ("NIH") (*id.*), a highly respected public health agency. *See Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) ("the views of public health authorities, such as the U.S. Public Health Service, CDC, and the National Institutes of Health, are of special weight and authority"). The FCM guidelines provide for procedures for identification of inmates with HCV, education of those inmates, screening and treatment. (D.I. 32, Ex. 3 at Tab 1.) The screening guidelines are used to determine when an inmate will be eligible for treatment, and include absolute exclusion criteria, relative exclusion criteria, and inclusion criteria. (*Id.* at 3-6.) The absolute exclusion criteria include "[n]ormal ALT or ALT <1.5 times normal during 6-12 month observation period prior to treatment plan initiation." (*Id.* at 4.) Similarly, the inclusion criteria include "[p]ersistently elevated ALT levels as defined by ALT at least 1.5 times normal limit over period of preceding 6 months." (*Id.* at 5.) To be treated, an inmate must meet all of the inclusion criteria, and "have no positive absolute exclusion criteria." (*Id.*) The guidelines also provide that a number of steps must be taken before treatment is started, including obtaining a "[d]ocumented pathology report of liver biopsy with results demonstrating moderate inflammation, interface changes, (piecemeal necrosis) and at least mild to moderate fibrosis indicating advanced liver disease." (*Id.* at 6.)

To implement the inclusion and exclusion criteria, the DOC and FCM used a document entitled "FCM Hepatitis C Exclusion and Inclusion Treatment Criteria Sheet." (*See* D.I. 32, Ex. 3 at Tab 3; D.I. 30, Ex. A.) Jordan was evaluated by Burns using this form on at least June 25, 2003. (D.I. 30, Ex. A.) At that time, Burns found that Jordan's

ALT levels had been normal or less than 1.5 times normal during the past twelve months. (*Id.*) Jordan therefore met an absolute exclusion criteria, and apparently failed to meet one of the inclusion criteria. (*See id.*) For that reason, Jordan was found to be ineligible for treatment for his HCV. (*Id.*)

Even though Jordan was found ineligible for treatment for his HCV, his condition has been monitored and evaluated regularly by a doctor at SCI. (*See* D.I. 30, Ex. B.) Jordan's ALT levels were checked twelve times between August 19, 2002 and December 29, 2005.[7] (*Id.*) His ALT levels were only greater than 1.5 times the normal limit on August 19, 2002 and September 3, 2002. Beginning with the test done on November 20, 2002, Jordan's ALT levels have been less than 1.5 times the normal range in every test. (*Id.*)

Jordan filed a grievance on April 30, 2004 with SCI for failure to properly diagnose and treat his HCV infection, and he requested all testing/treatment necessary for HCV, including a liver biopsy. (D.I. 2 at ¶ 59-60.) His grievance was denied by the Medical Grievance Committee, because the committee reasoned that he failed to meet the NIH criteria for a liver biopsy. (*Id.* at ¶ 63, Ex. 2.) On May 30, 2004, Jordan filed a grievance appeal which was denied on September 7, 2004 by defendant Howard. (*Id.* at ¶ 64-66, Ex. 3.) Thereafter, Jordan filed his Complaint with this court.

---

[7] Earlier test data for Jordan, dating from the 1990s, is also included with the information provided by the State Defendants, but is not discussed here because there are only four data points over a seven year period which ended over six years ago. (D.I. 30, Ex. B.)

5

### III.  STANDARD OF REVIEW

Because Defendants refer to matters outside any pleading, their Motions must be treated as motions for summary judgment. See Fed. R. Civ. P. 12(b) ("If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment").

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.

1995). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## IV. DISCUSSION

### A. Class Action Claims

Jordan appears to be asserting the claims in his complaint on behalf of himself and all other DOC inmates who are infected with HCV. (*See* D.I. 2 caption ("Donald Jordan, individually and on behalf of all persons similarly situated"); *id*. at ¶¶ 75, 77, 80, 82, 85-91.) However, "courts have consistently held that a prisoner acting *pro se* is inadequate to represent the interests of his fellow inmates in a class action." *Brathwaite v. Taylor*, No. 00-435-GMS, 2001 WL 1117134, at *2 n.3 (D. Del. Sept. 13, 2001) (citing *Maldonado v. Terhune*, 28 F. Supp. 2d 284, 299 (D.N.J. 1998); *Caputo v. Fauver,* 888 F. Supp. 168, 170 (D.N.J. 1992)). That is certainly true here, as the case involves this particular inmate's particular medical history involving a particular ailment. Therefore, Jordan cannot bring a class action suit, and to the extent that he attempts to assert claims on behalf of anyone but himself, his claims must be dismissed.

### B. § 1983 Claim

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment proscribes, with limited exceptions, any suit against a state, regardless of the relief sought. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58 (1996) (despite the fact that "only prospective injunctive relief rather than retroactive monetary relief" was sought, the court held that "we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the

7

suit is barred by the Eleventh Amendment."). Additionally, suits against state officials are proscribed when "the state is the real, substantial party in interest," unless the state consents to suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). A plaintiff may sue a state official for monetary damages, but "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury of State of Ind.*, 323 U.S. 459, 464 (1945).

Here, Jordan has brought § 1983 claims against the State of Delaware by suing the DOC and DOC employees Taylor, Howard, and Kearney in their official capacities. (D.I. 2 at ¶¶ 75, 84-93.) In view of the State's immunity under the Eleventh Amendment, which it has not waived, Jordan's Section 1983 claims against the DOC must be dismissed. *See Seminole Tribe*, 517 U.S. at 58; *see also Ospina v. Dep't of Corrections*, 749 F. Supp. 572, 578-79 (D. Del. 1990) (holding that the DOC has not waived Eleventh Amendment immunity). Additionally, the claims for monetary relief brought against Taylor, Howard, and Kearney in their official capacities are also barred by the Eleventh Amendment. However, claims for injunctive relief against Taylor, Howard, and Kearney in their official capacities are not barred by the Eleventh Amendment, *see Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) ("the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law"), and claims against them in their individual capacities

are similarly not barred. Furthermore, claims against FCM employees Burns and Rickards are not barred by the Eleventh Amendment.

### 2. Deliberate Indifference to a Serious Medical Need

Jordan has filed Section 1983 claims against each of the individual defendants for injunctive and monetary relief for violations of his Eighth and Fourteenth Amendment rights. Jordan alleges that his rights were violated by the Defendants' deliberate indifference to his serious medical needs because they failed to properly diagnose or treat his HCV infection. (D.I. 2 at ¶¶ 70-75.) Specifically, Jordan asserts that the Defendants' failure to provide him with a liver biopsy to properly diagnose his illness, and failure to provide appropriate treatment for his HCV, violated his rights under Section 1983. (*Id.* at ¶¶ 85-89.)

To establish a claim for cruel and unusual punishment under the Eighth Amendment based on the quality of medical treatment he received, Jordan must show that the Defendants exhibited deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference is shown where a defendant's conduct demonstrates "an unnecessary and wanton infliction of pain" or is "repugnant to the conscience of mankind." *Id.* at 104-06. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Robinson v. Weiss*, No. 00-345-SLR, 2001 WL

640980, at *4 (D. Del. May 9, 2001) (citing *Drummer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)).

A claim alleging negligence that would be sufficient to constitute medical malpractice is not enough to state a constitutional claim. *Estelle*, 429 U.S. at 106. The United States Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* Moreover, a difference of opinion between a patient and a doctor, or between two medical professionals, does not amount to "deliberate indifference to a serious medical need." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("there may ... be several acceptable ways to treat an illness."). Deliberate indifference is thus a high standard, and proving it presents a difficult burden.

Jordan's medical records show that since he was diagnosed with HCV, his condition has been monitored through laboratory tests. (D.I. 30 at ¶ 4, Ex. B.) Additionally, he was a member of the Hepatitis C Chronic Care Clinic[8] during FCM's tenure at SCI. (D.I. 32 at Ex. 3 ¶ 13.) Jordan does not dispute that his ALT levels were monitored, or that he was regularly seen by a doctor. (*See* D.I. 2 at ¶¶ 41, 56.) Jordan alleges, however, that without a liver biopsy, it is impossible to determine the amount of

---

[8] In her affidavit, Burns asserts that Jordan was a member of the Hepatitis C Chronic Care Clinic. (D.I. 32, Ex. 3 at ¶ 13.) By being a member of this clinic, Jordan "was regularly evaluated by a doctor [and] ... received regular lab work to monitor the health of his liver." (*Id.*) Thus, it appears that through his participation in the clinic, Jordan was receiving at least some additional care specifically for the monitoring of his HCV.

10

damage that has been done to his liver and whether treatment of his HCV is necessary. (D.I. 2 at ¶ 31.) Jordan further states that "[t]he failure to offer liver biopsies to ... [inmates] is inconsistent with the community standard of care for the diagnosis and treatment of HCV." (*Id.* at ¶ 39.) He provides support for his allegations though a letter from Dr. Foley, who indicates that "recent practice guidelines recommend that a liver biopsy be done before treatment ... is started" and that "[t]reatment is ... only suggested if biopsy shows marked degrees of liver damage." (D.I. 35 at Ex. 1.)

Jordan's allegations, however, amount, at most, to a claim of medical negligence. Jordan's complaint focuses on his disagreement with the standards adopted by the DOC and FCM. It appears that, were Jordan being treated by Dr. Foley, that doctor may have recommended a liver biopsy and treatment for HCV, but differences of opinion among medical professionals are not sufficient to support a constitutional claim. See *White*, 897 F.2d at 110. Nothing in Jordan's allegations shows that any of the Defendants knew he needed medical treatment and refused to provide it. To the contrary, it appears that Jordan's disease was monitored and that he was regularly seen by a doctor. Furthermore, Jordan has not shown that he was refused a liver biopsy and treatment for a non-medical reason. Although Jordan claims that he was denied a biopsy for purely monetary reasons (D.I. 2 at ¶ 43), Defendants have shown that inmates are given liver biopsies and treatment when they meet certain established medical criteria (D.I. 32, Ex. 3 at Tab 1, 2, 3). Finally, Jordan has not shown that any of the Defendants prevented him from receiving needed medical treatment. Although I understand that Jordan is frustrated because he feels he is not receiving the best possible care for his HCV, he has failed to allege facts to meet the

difficult burden of showing that Defendants were deliberately indifferent to his serious medical needs, and thus that they have committed a constitutional violation. For that reason, Defendants' Motions for Summary Judgment will be granted.

C.    **Americans with Disabilities Act Claim**

Jordan claims that Defendants have discriminated against him in violation of Title II[9] of the ADA by failing to accommodate his handicapped condition in not providing adequate medical care, as he alleges that Defendants denied him access "to medical care treatment, evaluation by qualified liver and/or HCV specialist in combination with liver biopsy." (D.I. 2 at ¶ 82.) Title II of the ADA, 42 U.S.C. § 12132, pertains to public services and states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The term "public entity" includes state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). In effect, "Title II authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 126 S.Ct. 877, 879 (2006).[10]

---

[9]Defendants Taylor, Howard and Kearney have properly pointed out that although Jordan cited 42 U.S.C. § 12111(8) (Title I of the ADA) in his complaint (D.I. 2 at ¶ 82), the section of the ADA applicable to him is 42 U.S.C. § 12132, Title II of the ADA. (D.I. 22 at 4, n.1.) Thus, I will analyze his ADA claim under that section.

[10] The language of the ADA unambiguously reads, "state[s] shall not be immune under the [E]leventh [A]mendment...for a violation of this chapter." 42 U.S.C. § 12202. In the recent case of *United States v. Georgia*, 126 S. Ct. 877 (2006), the Supreme Court held that, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 882 (emphasis in original). The Court reasoned that to the extent the plaintiff's Title II claims were based on conduct that

However, Title II of the ADA does not authorize suits against individuals. *Miller v. King*, 384 F.3d 1248, 1277 (11th Cir. 2004) ("the natural meaning of § 12132 is that liability extends only to public entities and not to persons in their individual capacities"). Thus, to the extent that Jordan is attempting to sue Taylor, Howard, Kearney, Rickards, or Burns in their individual capacities, summary judgment must be granted.

To establish a prima facie case under Title II of the ADA the plaintiff must show that: "(1) he is a 'qualified person with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Gorrell v. Del. State Police*, No. 98-649-SLR, 1999 WL 1893142, at *3 (D. Del. Oct. 20, 1999). Viewing the facts in the light most favorable to Jordan, I cannot conclude that the state or the state officials discriminated against him based on his HCV infection. Jordan's allegations, that he was denied a liver biopsy and treatment for his HCV, do not support a claim that he was denied benefits or discriminated against because of his HCV status. *Compare Owens v. Chester Co.*, No. Civ. A 97-1344, 2000 WL 116069, at *12 (E.D. Pa. Jan. 28,

---

constituted a constitutional violation, the state's immunity could be abrogated. *Id.* at 880-82. Yet, the Court declined to issue judgment on whether the state's immunity could be validly abrogated when the state's conduct violated Title II, but not the Fourteenth Amendment. *Id.* at 882. The Court remanded the case for the lower courts to determine, "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.* I do not find it necessary to undergo the analysis set forth in *Georgia* to determine whether abrogation of the state's immunity is proper because Jordan has failed to make a *prima facie* case under Title II of the ADA.

2000) (finding that there was a genuine issue of material fact as to whether a prisoner was denied benefits based on his disability, where he was not allowed to have his crutches, and where he could not always get meals, use the phone, or get to the library without them). The ADA cannot be used to bring a claim for medical negligence. *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). In *Bryant*, an inmate brought an ADA claim for refusal of his request to provide guardrails for his bed and failing to provide him with medication after leg surgery. *Id.* at 247. The court wrote, "the Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners ... [t]he ADA does not create a remedy for medical malpractice." *Id.* at 249; *see also Owens*, 2000 WL 116069, at *10 n.5 (same). Because Jordan's allegations would support, at most, a claim for medical negligence, his ADA claim must fail.

Indeed, what Jordan is attempting to argue here is that all prisoners with HCV should receive different treatment than is currently provided for by DOC policy. This argument does not support a claim that he was not provided with appropriate medical care because of his HCV status. Furthermore, the facts show that Jordan was provided with medical care, and that his disease was monitored through testing. Thus, Jordan has not alleged any facts to show that he was "excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity" because of his HCV. In fact, it appears that Jordan was offered the benefits of the medical protocol that the DOC provided to its inmates infected with HCV. Jordan's contentions as to what services he should be provided because of his HCV do not establish a claim for discrimination under the ADA.

### D.    Intentional Infliction of Emotional Distress Claim

Jordan has also brought a claim for intentional infliction of emotional distress against the Defendants, alleging that their failure to provide him with a medical evaluation by a liver specialist and a liver biopsy amounts to outrageous conduct (D.I. 2 at ¶ 77) and that it has caused him "great emotional distress and anxiety" (*id.* at ¶ 73). As was previously explained, *supra* section IV.B.1., the Eleventh Amendment precludes a claim for monetary damages from being made against the state and the state officials acting in their official capacity. *See also Walter v. Div. of Revenue for State of Del.*, 961 F.Supp. 97, 101 (D. Del. 1997) (*citing Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 119-23 (1984)); *Marvel v. Snyder*, No. 99-442-GMS, 2001 WL 830309, at *10 (D. Del. July 24, 2001). Because Jordan appears only to request monetary damages for his intentional infliction of emotional distress claim, summary judgment on that claim must be granted to the DOC, and to Taylor, Howard, and Kearney in their official capacities.

Furthermore, Jordan has failed to substantiate a claim for intentional infliction of emotional distress. Under Delaware law, to establish a claim for intentional infliction of emotional distress, the elements that a plaintiff must prove are, "(1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress or reckless disregard with respect to causing emotional distress; and, (3) the conduct actually caused severe emotional distress." *Capano Mgmt. Co. v. Transcon. Ins. Co.*, 78 F. Supp. 2d 320, 327 (D. Del. 1999) (citing *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. 1987)). Extreme and outrageous conduct has been defined as behavior, "so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mattern*, 532 A.2d at 86 (citing Restatement (Second) Torts § 46). Even viewing the facts in the light most favorable to Jordan, I am unable to find that the behavior of Taylor, Howard, Kearney, Burns, or Rickards amounted to extreme and outrageous conduct, or that their conduct exceeded "all possible bounds of decency." Their conduct does not support an Eighth Amendment claim, and was in line with medical standards adopted by the DOC and FCM for the treatment of inmates with HCV. *See supra* section IV.B.2. Thus, summary judgment will be granted to Defendants on Jordan's intentional infliction of emotional distress claim.

## V.     CONCLUSION

Accordingly, I will grant summary judgment as to all claims against the Defendants. An appropriate order will follow.